WEINBERG, Appellant, vs. KLUCHESKY, Chief of Police, Respondent.

*October 9—November 8, 1940.*

For the appellant there were briefs by *Jacob S. Rothstein, Sol Kahn,* and *N. D. Rothstein,* all of Milwaukee, and oral argument by *N. D. Rothstein* and *Jacob S. Rothstein.*

For the respondent there was a brief by *Walter J. Mattison,* city attorney of Milwaukee, and *Leo B. Hanley,* assistant city attorney, and oral argument by *Mr. Hanley.*

FRITZ, J.   The plaintiff seeks an injunction permanently enjoining the chief of police of Milwaukee from prosecuting him for keeping a retail liquor store, which he operates under a "Retail Class A" license issued under sec. 176.05 (2), Stats., open between 9 o'clock p. m. and 1 o'clock a. m., in violation of sec. 176.06 (2), Stats.  The statutory provisions involved, so far as here material, read as follows:

Sec. 176.05 (2) (a): "Licenses to sell, deal, or traffic in intoxicating liquors shall be designated either 'Retail Class A' or 'Retail Class B.'  A retail license 'Class A' shall permit its holder to sell, deal and traffic in intoxicating liquors only in original packages or containers, in quantities of not more than three wine gallons at any one time, and to be consumed off the premises so licensed, except that wine may be sold in the original package or otherwise in any quantity. . . .

"(b) In all counties containing a city of the first class . . . a retail license 'Class B' shall permit its holder

to sell, deal and traffic in intoxicating liquors to be consumed by the glass only on the premises so licensed, and in the original package or container, in quantities of not more than one quart at any one time, and to be consumed off the premises so licensed, except that wine may be sold in the original package or otherwise in any quantity to be consumed off the premises."

Sec. 176.06: "No premises for which a . . . retail liquor license has been issued shall be permitted to remain open for the sale of liquor: . . .

"(2) If a retail 'Class A' license, between 9 p. m. and 8 a. m.

"(3) If a retail 'Class B' license, between 1 a. m. and 8 a. m."

Plaintiff contends that because "Class B" licensees in Milwaukee county, as well as "Class A" licensees, have in common the privilege of selling in original packages for off-premises consumption wine in any quantity and more highly intoxicating liquor in quantities up to one quart at any one time (in so far as "Class B" licensees are permitted to so sell it), the provisions in sec. 176.06, Stats., which limit the time for keeping "Class A" licensed premises open to 9 o'clock p. m.,—but permit "Class B" licensed premises to continue open until 1 o'clock a. m.,—are unreasonable, discriminatory, and oppressive, and deny plaintiff the equal protection of the law in contravention of the equality and due process of law provisions in the federal and state constitutions.

In passing upon these contentions there are applicable the well-established principles that the legislature in the exercise of the police power may entirely prohibit traffic in intoxicating liquors for use as a beverage, or may license such traffic conditionally by imposing such restraints or conditions upon licensees as it considers necessary and reasonable in its judgment and discretion; even though the conditions coupled with the license may be so burdensome that

the business cannot be conducted successfully thereunder. *State ex rel. Henshall v. Ludington,* 33 Wis. 107; *Zodrow v. State,* 154 Wis. 551, 143 N. W. 693; *General Sales & Liquor Co. v. Becker,* 14 Fed. Supp. 348; *Premier-Pabst Sales Co. v. McNutt, Governor,* 17 Fed. Supp. 708; 16 C. J. S. p. 1027, § 512. As we said in *Vieau v. Common Council,* 235 Wis. 122, 124, 125, 292 N. W. 297,—

"The regulation of the sale of intoxicating liquors does not come within the equality provisions of the United States constitution. As was stated in *Giozza v. Tiernan,* 148 U. S. 657, 661, 13 Sup. Ct. 721, 37 L. Ed. 599,—'The privileges and immunities of citizens of the United States are privileges and immunities arising out of the nature and essential character of the national government, and granted or secured by the constitution of the United States, and the right to sell intoxicating liquors is not one of the rights growing out of such citizenship.' See also *Bartemeyer v. Iowa,* 85 U. S. (18 Wall.) 129, 21 L. Ed. 929. . . . Statutes regulating the sale of intoxicating liquor may prescribe requirements which result in classification as between citizens. . . . As was said in *Mehlos v. Milwaukee,* 156 Wis. 591, 604, 146 N. W. 882,—'There is no federal guaranty which exempts citizens of the United States from reasonable police regulations as regards person and property, *State ex rel. Kellogg v. Currens,* 111 Wis. 431, 87 N. W. 561, or which prevents legitimate classification for the purpose of police regulation. In case of such classification and the regulation affecting all members of the class alike, there is no violation of any equality clause of national or state constitution.' "

The principal purpose of the classification under consideration is evidently the creation of two classes of retail dealers, viz., "Class A" licensees, who virtually as merchants are permitted to sell liquors only in the original package for consumption elsewhere than on the licensee's premises; and "Class B" licensees, who as tavern or restaurant keepers sell principally by the glass only for consumption on the licensed

premises. And in respect to such sales as are permitted to be made by either class in the original package for off-premises consumption there is likewise the substantial difference that "Class A" licensee's sales of liquor, other than wine, can be in quantities as large as three gallons at any one time, but such sales by a "Class B" licensee cannot be in excess of one quart.

The difference between the conditions and consequences incidental to sales of beverages at retail for consumption off, as compared to consumption on licensed premises was held in *Milwaukee v. Kaun*, 204 Wis. 103, 105, 235 N. W. 551, to afford sufficient basis for a similar classification of licensees. In passing upon the contention that such a classification in an ordinance was discriminatory because of differences in the license fee imposed, we said,—

"The common council . . . may look beyond the mere mercantile transaction to the results likely to follow in the wake of this traffic in deciding upon a basis for classification of persons engaging in this business. Consideration is to be given to the opportunity for law violations and the tendency toward disorder. . . . As the ordinance is for the purpose of regulating a business which is subject to regulation, the limitations are a matter of discretion and policy. *Maercker v. Milwaukee*, 151 Wis. 324, 139 N. W. 199. The classification being legitimate and proper and all in the same class being treated alike, the ordinance is not discriminatory."

So in enacting the regulations in question with differences in the closing hours prescribed for each class it was within the province of the legislature to take into consideration such matters as the following: The greater opportunity for violations and the tendency toward disorder following sales after 9 o'clock p. m. of highly intoxicating liquor in quantities as large as three gallons at one time for consumption elsewhere than on licensed premises which are

subjected to greater police inspection and supervision, that tend to prevent excessive consumption and resulting intoxication; the adequacy of the period from 8 o'clock a. m. to 9 o'clock p. m. for patrons to make such purchases for off-premises consumption, and that by so limiting the period the public will be freed from the cost of police supervision of such traffic beyond that period; and that as purchases of liquor by the glass for consumption in taverns or restaurants operated under "Class B" licenses are made largely by patrons during hours of leisure and social recreation, it was reasonable and not apt to interfere seriously with the maintenance of good order and public safety to permit such premises to be kept open until 1 o'clock a. m.

Moreover, plaintiff was free to select under which one of these two classes of licenses he preferred to operate. Having chosen to sell liquor in the greater quantities and for use in the manner permitted under a "Class A" license, rather than to sell in the more limited quantity for use in more restricted manner permitted under a "Class B" license, the statutory restrictions, which are applicable alike to all licensees operating under the "Class A" license which he preferred, cannot be considered unreasonable, arbitrary, oppressive, or discriminatory as to him, nor to deny to him the equal protection of the law.

*By the Court.*—Judgment affirmed.